IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES DEAN BROWNING, | ) | CASE NO.  1:24-CV-00538-BMB |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| Defendant. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| | ) | |

Plaintiff, James Dean Browning ("Plaintiff" or "Browning"), challenges the final decision of Defendant, Martin O'Malley,[1] Commissioner of Social Security ("Commissioner"), denying his application for Period of Disability ("POD") and Disability Insurance Benefits ("DIB"), under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I.  PROCEDURAL HISTORY

In January 2022, Browning filed an application for POD and DIB, alleging a disability onset date of April 22, 2020, and claiming he was disabled due to epilepsy, skin disorder, back pain, PTSD, depression, and anxiety. (Transcript ("Tr.") 17, 81.)  The application was denied initially and upon

---

[1] On December 20, 2023, Martin O'Malley became the Commissioner of Social Security.

reconsideration, and Browning requested a hearing before an administrative law judge ("ALJ").  (*Id.* at 17.)

On December 7, 2023, an ALJ held a hearing, during which Browning, represented by counsel, and an impartial vocational expert ("VE") testified.  (*Id.*)  On January 4, 2024, the ALJ issued a written decision finding Browning was not disabled.  (*Id.* at 17-29.)  The ALJ's decision became final on January 23, 2024, when the Appeals Council declined further review.  (*Id.* at 1-6.)

On March 23, 2024, Browning filed his Complaint to challenge the Commissioner's final decision. (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 9, 11-12.) Browning asserts the following assignment of error:

(1) The ALJ erred when failing to identify substantial evidence supporting the residual functional capacity finding.

(Doc. No. 9 at 14.)

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Browning was born in April 1965 and was 58 years-old at the time of his administrative hearing (Tr. 17, 27), making him a "person of advanced age" under Social Security regulations.  *See* 20 C.F.R. § 404.1563(e).  He has at least a high school education.  (Tr. 27.)  He has past relevant work as a material handler, car porter, and industrial truck operator.  (*Id.*)

**B.      Relevant Medical Evidence[2]**

On August 24, 2021, Browning saw Paul A. Chang, M.D., for follow up after Browning had a seizure on August 21, 2021, while his son was receiving treatment at the emergency room.  (*Id.* at 544, 546.)  Dr. Chang noted Browning "was very anxious and tearful about the recent seizure episode."  (*Id.* at 547.)  On examination, Dr. Chang found Browning alert and oriented with a normal affect.  (*Id.*)

On September 7, 2021, Browning saw Dr. Chang for follow up regarding repeat lab work.  (*Id.* at 538, 541.)  Dr. Chang noted that Browning reiterated that he was "very worried and anxious about having another seizure episode."  (*Id.* at 541.)  On examination, Dr. Chang found Browning alert, oriented, and anxious, with a normal affect.  (*Id.*)

On October 7, 2021, Browning saw Dr. Chang for follow up of his seizure disorder, hypertension, and depression.  (*Id.* at 533, 535.)  Dr. Chang noted Browning was "currently tolerating the sertraline 50mg which was recently increased from 25mg."  (*Id.* at 535.)  On examination, Dr. Chang found Browning alert, oriented, and anxious, with a normal affect.  (*Id.*)

On December 2, 2021, Browning underwent a Diagnostic Assessment Update at Catalyst Life Services.  (*Id.* at 333-35.)  Browning reported losing his job in December 2019 after having a seizure on the job and had struggled to find work since that time.  (*Id.* at 334.)  He stated he was having financial problems and was in danger of losing his apartment.  (*Id.*)  He experienced a seizure in August 2021 and had experienced three minor seizures since that time.  (*Id.*)  He reported getting divorced in 2017 and that his divorce was still affecting him.  (*Id.*)  He experienced anxiety and bad memories around the holidays,

---

[2] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.  As Browning challenges the ALJ's mental residual functional capacity findings, the Court limits its discussion of the evidence to Browning's mental impairments.  The Court notes that Browning does challenge the ALJ's findings regarding fatigue, but for the reasons set forth *infra*, the Court finds that argument to be waived to the extent they relate to a challenge to the ALJ's physical findings and/or the ALJ's subjective symptom analysis.  In addition, Browning fails to discuss fatigue in the Facts section of his brief as required in the Court's Initial Order.  (Doc. No. 5.)

as his wedding anniversary was in December. (*Id.*) On examination, treatment providers found Browning engaged and cooperative throughout the session, and noted he was "tearful when explaining his relationship issues." (*Id.*) Browning's diagnoses consisted of posttraumatic stress disorder, major depressive disorder, recurrent episode, moderate, and unspecified adjustment disorder. (*Id.*)

On December 6, 2021, Browning saw Dr. Chang for follow up of his seizure disorder, hypertension, hyperlipidemia, and depression. (*Id.* at 528, 530.) Browning reported tolerating 50mg of Sertraline and that he was trying to get counseling at Catalyst. (*Id.* at 530.) On examination, Dr. Chang found Browning alert, oriented, and anxious, with a normal affect. (*Id.* at 531.) Dr. Chang determined Browning's depressive disorder was not stabilized. (*Id.*) Dr. Chang prescribed buspirone for anxiety and recommended Browning establish care with a counselor and psychiatrist. (*Id.* at 531-32.)

On December 14, 2021, Browning saw Dr. Chang for follow up regarding his depression, anxiety, seizure disorder, and hypertension. (Tr. 522, 526.) Dr. Chang noted Browning had been prescribed buspirone at his last visit and continued on 50mg of Sertraline, which Browning was tolerating well. (*Id.* at 526.) Dr. Chang found Browning continued to be "very emotionally unstable and tearful in the office." (*Id.*) On examination, Dr. Chang found Browning alert, oriented, and anxious, with a normal affect. (*Id.*) Dr. Chang increased Sertraline to 100mg. (*Id.* at 527.)

On December 28, 2021, Browning saw Dr. Chang for follow up regarding his depression, anxiety, seizure disorder, and hypertension. (*Id.* at 517, 519.) Browning reported a continued "depressed fluctuating mood." (*Id.* at 519.) Dr. Chang noted Browning was tolerating the increased Sertraline and continued to take Buspirone twice a day. (*Id.*) Browning told Dr. Chang he continued to lack energy and struggled with staying asleep. (*Id.*) On examination, Dr. Chang found Browning alert, oriented, and anxious, with a normal affect. (*Id.*) Dr. Chang prescribed Doxepin for insomnia and recommended that Browning keep his counseling appointment and establish care with a psychiatrist. (*Id.* at 520.)

On January 31, 2022, Browning saw Dr. Chang for follow up regarding his depression, anxiety, seizure disorder, and hypertension.  (*Id.* at 512, 515.)  Browning reported continued severe depression despite increasing Sertraline to 100mg and taking Buspirone twice a day.  (*Id.* at 515.)  Browning told Dr. Chang he continued to lack energy and struggled to stay asleep.  (*Id.*)  On examination, Dr. Chang found Browning alert, oriented, anxious, and tearful, with a flat affect.  (*Id.*)  Dr. Chang recommended Browning continue counseling and establish care with a psychiatrist.  (*Id.* at 516.)

On March 29, 2022, Browning saw Dr. Chang for follow up regarding his depression, anxiety, seizure disorder, and hypertension.  (*Id.* at 507, 510.)  Browning reported continued severe depression and stress.  (*Id.* at 510.)  Browning told Dr. Chang he was only taking the Doxepin on the weekends as it made him "too groggy" during the day.  (*Id.*)  He continued to lack energy.  (*Id.*)  On examination, Dr. Chang found Browning alert and oriented with a flat affect.  (*Id.*)  Dr. Chang recommended medication compliance and continued counseling.  (*Id.* at 511.)

On May 24, 2022, Browning saw Dr. Chang for follow up regarding his depression, anxiety, seizure disorder, and hypertension.  (*Id.* at 502, 505.)  Browning reported continued severe depression, anxiety, and stress.  (*Id.* at 505.)  He told Dr. Chang he was tolerating Buspar and Sertraline, but his depression and anxiety remained uncontrolled.  (*Id.*)  Dr. Chang noted Browning was "very stressed and tearful in the office worrying about his seizures and his financial instability."  (*Id.*)  Browning reported he was taking Doxepin on the weekends because it made him groggy during the day.  (*Id.*)  He endorsed continued lack of energy.  (*Id.*)  Dr. Chang noted Browning said he was seeing a psychiatrist "but it turned out he was referring to his 'therapist.'"  (*Id.*)  On examination, Dr. Chang found Browning alert and oriented with a flat affect.  (*Id.*)

On June 30, 2022, Browning saw Dr. Chang for follow up.  (*Id.* at 497, 499.)  Browning reported continued severe depression, anxiety, and stress.  (*Id.* at 499.)  He told Dr. Chang he was tolerating Buspar

and Sertraline, but his depression and anxiety remained uncontrolled.  (*Id.*)  Dr. Chang noted Browning remained "very stressed about his seizures and his financial instability" and Browning had not seen a psychiatrist as he could not find one that took his insurance.  (*Id.*  at 499-500.)  Browning reported he was taking Doxepin on the weekends because it made him groggy during the day.  (*Id.* at 500.)  He endorsed continued lack of energy.  (*Id.*)  On examination, Dr. Chang found Browning alert and oriented with a flat affect.  (*Id.*)

On July 12, 2022, Browning saw Courtney Leigh Brooks, CNP, for an initial psychiatric assessment.  (*Id.* at 608.)  Browning reported that his stressors, anxiety, and depression had increased in 2015, and his divorce caused him great anxiety.  (*Id.* at 609.)  His depression had worsened since then. (*Id.*)  Browning told Brooks he was seeing Guy Daily at Catalyst for therapy.  (*Id.*)  He reported too much sleep, a poor appetite, and good medication compliance.  (*Id.*)  He endorsed low energy, decreased interest and pleasure in things, occasional anger/irritability, occasional anxiety/panic, and feelings of guilt.  (*Id.* at 612.)  On examination, Brooks found Browning to have a neat, clean, and age-appropriate appearance, with pleasant and cooperative behavior and good eye contact.  (*Id.*)  Brooks further found linear and goal-directed flow of thought, intact thought associations, a "'depressed'" mood, a sad, depressed, hopeless, and tearful affect, intact judgment and insight, and intact attention and concentration.  (*Id.*)  Browning's diagnoses consisted of generalized anxiety disorder, moderate episode of recurrent major depressive disorder, and prolonged grief reaction.  (*Id.* at 612-13.)  Brooks continued Browning's medication regimen.  (*Id.* at 613.)

On July 28, 2022, Browning saw Brooks for medication management.  (*Id.* at 616-17.)  Browning reported weaning off Zoloft as planned and taking his medication as prescribed.  (*Id.* at 617.)  He denied any side effects.  (*Id.*)  Browning told Brooks his daughter was moving in with him, which he was happy about as living alone sometimes increased his anxiety because of his seizure disorder.  (*Id.*)  He also

reported "a lot of ongoing anxiety" regarding his upcoming EEG.  (*Id.*)  Browning endorsed "daily mild anxiety" and felt the Buspar helped.  (*Id.*)  Browning reported continuing to feel emotional, crying often, fluctuating mood, decreased appetite, and difficulty staying asleep.  (*Id.*)  On examination, Brooks found Browning to have a neat, clean, and age-appropriate appearance, with pleasant and cooperative behavior and good eye contact.  (*Id.* at 618.)  Brooks further found normal speech, linear and goal-directed flow of thought, intact thought associations, fair mood, a depressed and tearful affect, intact insight, fair judgment, intact attention, and reduced concentration.  (*Id.*)  Brooks adjusted Browning's medication.  (*Id.* at 619.)

On August 16, 2022, Browning saw Guy Daly, LISW, for counseling.  (*Id.* at 661.)  Browning reported a recent seizure he thought was caused by stress and high temperatures.  (*Id.*)  He told Daly he was scared about upcoming testing for his seizure disorder but was also looking forward to learning how to reduce the frequency of his seizures and better manage his symptoms.  (*Id.*)  He also expressed mixed feelings about his daughter and grandson moving in with him.  (*Id.*)  Daly determined Browning had made some progress.  (*Id.*)

On August 24, 2022, Browning saw Daly for counseling and reported his neurological testing had revealed he had right-side specific epilepsy.  (*Id.* at 660.)  While it was a "very serious" diagnosis, Browning thought it would "assist him with [his] application for SSDI benefits" and it would provide a "starting point" for a more focused treatment program.  (*Id.*)  Daly determined Browning had made some progress.  (*Id.*)

On September 6, 2022, Browning saw Daly for counseling and reported he was anxious because his daughter and grandson had moved in with him and he found their early wake-up time "intrusive."  (*Id.* at 658.)  Daly noted Browning had made some progress.  (*Id.* at 659.)

On September 7, 2022, Browning saw Brooks for medication management.  (*Id.* at 622.)  He reported feeling "'okay'" and denied worsening depression or anxiety, although he had not noticed much

improvement either.  (*Id.*)  He endorsed continued daily sadness over his divorce and anxiety over his daughter and grandson moving in with him.  (*Id.*)  He denied any medication side effects.  (*Id.*)  He reported his sleep and appetite were within normal limits.  (*Id.*)  On examination, Brooks found Browning to have a neat, clean, and age-appropriate appearance, with pleasant and cooperative behavior and good eye contact.  (*Id.* at 623.)  She noted Browning appeared older than his stated age.  (*Id.*)  Brooks further found normal speech, linear and goal-directed flow of thought, intact thought associations, sad and depressed affect, intact insight and judgment, and intact attention and concentration.  (*Id.*)  Brooks adjusted Browning's medication.  (*Id.* at 624.)

On November 2, 2022, Browning saw Brooks for medication management.  (*Id.* at 753.)  Browning reported feeling stable at that time and denied any new symptoms or medication side effects.  (*Id.*)  On examination, Brooks found Browning to have a neat, clean, and age-appropriate appearance, with pleasant and cooperative behavior and good eye contact.  (*Id.* at 755.)  Brooks further found normal speech, linear and goal-directed flow of thought, an "'anxious'" mood, a sad and tearful affect, fair insight and judgment, and intact attention and concentration.  (*Id.* at 755-56.)  Brooks continued Browning's medications.  (*Id.* at 757.)

On January 11, 2023, Browning saw Brooks for medication management.  (*Id.* at 765.)  Browning reported increased depression and anxiety.  (*Id.*)  He told Brooks he either had trouble falling asleep or sleeping too much.  (*Id*.)  He denied irritability.  (*Id.*)  On examination, Brooks found Browning to have a neat, clean, and age-appropriate appearance, with pleasant and cooperative behavior and good eye contact.  (*Id.* at 769.)  Brooks further found normal speech, linear and goal-directed flow of thought, intact thought associations, a "'not good'" mood, a worried, sad, and tearful affect, fair insight and judgment, and intact attention and concentration.  (*Id.*)  Brooks adjusted Browning's medication.  (*Id.*)

On January 30, 2023, Browning saw Brooks for medication management.  (*Id.* at 779.)  Browning reported "doing poorly"; he had been denied disability and was still waiting on his appeal.  (*Id.*)  He told Brooks he was $4,000 behind in rent and his daughter was living with him to help with the utilities.  (*Id.*)  Brooks noted Browning was tearful that day and he reported feeling "a lot of daily anxiety and feelings of depression over his change in life."  (*Id.*)  On examination, Brooks found Browning appeared older than his stated age, with pleasant and cooperative behavior and good eye contact.  (*Id.* at 783.)  Brooks further found normal speech, linear and goal-directed flow of thought, intact thought associations, a "'not good'" mood, an anxious, worried, fearful, sad, depressed, hopeless, and tearful affect, intact insight, good judgment, and intact attention and concentration.  (*Id.*)

On March 22, 2023, Browning saw Brooks for medication management.  (*Id.* at 795.)  Browning reported tolerating his medication well, but he continued to have moderate depression and anxiety.  (*Id.*)  On examination, Brooks found Browning to have a neat, clean, and age-appropriate appearance, with pleasant and cooperative behavior and good eye contact.  (*Id.* at 799.)  Brooks further found normal speech, linear and goal-directed flow of thought, intact thought associations, a "'so-so'" mood, depressed affect, intact insight and judgment, adequate attention, and reduced concentration.  (*Id.*)  Brooks adjusted Browning's medication.  (*Id.* at 799-800.)

On April 19, 2023, Browning saw Brooks for medication management.  (*Id.* at 809.)  Browning reported tolerating his medication well.  (*Id.*)  He denied any adverse side effects and told Brooks he had noticed a "slight improvement" in his symptoms.  (*Id.*)  On examination, Brooks found Browning to have a neat, clean, and age-appropriate appearance, with pleasant and cooperative behavior and good eye contact.  (*Id.* at 813.)  Brooks further found normal speech, linear and goal-directed flow of thought, intact thought associations, an "'okay'" mood, sad affect, intact insight and judgment, and intact attention and concentration.  (*Id.*)

On June 7, 2023, Browning saw Brooks for medication management. (*Id.* at 823.) Browning reported tolerating his medication well. (*Id.*) He told Brooks his symptoms continued but had improved a bit. (*Id.*) On examination, Brooks found Browning to have a neat, clean, and age-appropriate appearance, with pleasant and cooperative behavior and good eye contact. (*Id.* at 827.) Brooks further found normal speech, linear and goal-directed flow of thought, intact thought associations, an "'okay'" mood, flat affect, intact insight and judgment, and intact attention and concentration. (*Id.*)

## C.     State Agency Reports

On April 4, 2022, Aracelis Rivera, Psy.D., reviewed the file and opined that Browning's mental impairments were non-severe. (*Id.* at 83.) Dr. Rivera stated that "[t]he 416 given is an adoption of the findings from the ALJ decision dated 11/1/21 based on AR-98-4." (*Id.*)

On October 24, 2022, on reconsideration, Robert Baker, Ph.D., reviewed the file and opined that Browning's mental impairments were non-severe. (*Id.* at 92-93.) Dr. Baker explained:

> I have reviewed the file and do find new but not material evidence. Clmt appears to be experiencing some increased symptoms of depression. However, functionally, there does not appear to be an increase in his limitations. The PRTF given is an adoption of the PRTF findings from the ALJ decision dated 11/1/21, based on AR98-4.
>
> The prior administrative medical findings from the initial level appear to be consistent and well supported by the totality of the evidence in file. The limitations noted above are consistent with the MER and with prior administrative findings.

(*Id.* at 93.)

## D.     Hearing Testimony

During the December 7, 2023 hearing, Browning testified to the following:

- He lives in an apartment by himself. (*Id.* at 41, 44.)

- He works part-time. (*Id.* at 41.) He cleans coaches as needed. (*Id.* at 42.) He works maybe fifteen hours every two weeks. (*Id.*)

10

- His seizure medications make him very tired.  (*Id.* at 47.)  He needs to rest after standing and walking for three or four hours.  (*Id.*)  Sometimes he needs to rest about an hour, sometimes he needs to rest for longer.  (*Id.*)  He is tired all the time.  (*Id.* at 52.)

- Some days he feels lost and doesn't know what to do.  (*Id.* at 49.)  He just wants to hide.  (*Id.*)  On those days, he stays in bed all day because he doesn't want to be around anyone.  (*Id.* at 49-50.)  That happens three to four times a week.  (*Id.* at 50.) If he goes to functions and there is a big group of people, he cannot handle it; he says his piece and then he leaves.  (*Id.* at 52.)

- He takes Effexor for his mental health impairments.  (*Id.* at 50.)  He does not have any side effects from his medication besides being tired all the time.  (*Id.* at 51.)  He also undergoes counseling, and that is helpful.  (*Id.* at 51-52.)

- He makes small meals.  (*Id.* at 50.)  His appetite has been poor, and he has lost fifteen pounds.  (*Id.*)

The ALJ applied the prior administrative findings regarding past work.  (*Id.* at 43.)  The ALJ then posed the following hypothetical question:

> I'd like you to assume an individual with Mr. Browning's age, his education, and the past work as found in the prior Decision, with the exception of the mail carrier.  I'd like you to assume that the individual has the physical capacity to work at all exertional levels as defined in the <u>Dictionary of Occupational Titles</u> and Social Security Regulations, except the individual cannot climb ladders, ropes, or scaffolds, cannot work around hazards such as unprotected heights or dangerous machinery and cannot engage in commercial driving.  Further assume the ability to occasionally climb stairs or ramps.  You should assume mentally that the individual can perform simple, routine tasks not involving a fast assembly line pace or strict production quotas and where the work does not require more than occasional and superficial contact with coworkers, supervisors, and the public, with superficial defined here as not involving negotiation, evaluation, persuasion, conflict resolution, or anything more than the straightforward exchange of information.

(*Id.* at 55-56.)  The ALJ subsequently modified this hypothetical to no driving.  (*Id.* at 57.)

The VE testified the hypothetical individual would not be able to perform Browning's past work as a material handler, car porter, and industrial truck operator.  (*Id.* at 27, 57.)  The VE further testified the hypothetical individual would be able to perform other representative jobs in the economy, such as stores laborer, hand packager, and industrial cleaner.  (*Id.* at 57.)

11

The ALJ modified the hypothetical to add that the hypothetical individual could not perform any team or tandem work and could not have contact with the public.  (*Id.*)  The VE testified that the additions would not change the identified jobs.  (*Id.* at 58.)

### III.    STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a).

A claimant is entitled to a POD only if the claimant: (1) had a disability; (2) was insured when the claimant became disabled; and (3) filed while the claimant was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4)*,* 416.920(a)(4).  *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that they are not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claimant must show that they suffer from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c), 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience.

*See* 20 C.F.R. §§ 404.1520(d), 416.920(d).    Fourth, if the claimant's impairment or combination of impairments does not prevent the claimant from doing their past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent the claimant from doing their past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g).

Here, Browning was insured on the alleged disability onset date, April 22, 2020, and remains insured through December 31, 2024, the date last insured ("DLI").  (Tr. 17.) Therefore, in order to be entitled to POD and DIB, Browning must establish a continuous twelve-month period of disability commencing between these dates.  Any discontinuity in the twelve-month period precludes an entitlement to benefits.  *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

## IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act at all times relevant to this decision.

2.    The claimant has not engaged in substantial gainful activity since April 22, 2020, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.    The claimant has the following severe impairments: seizure disorder, generalized anxiety disorder, and major depressive disorder (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels as defined in the *Dictionary of Occupational Titles* and Social Security Regulations except that the claimant cannot climb ladders, ropes, and scaffolds or work around hazards such as unprotected heights or dangerous machinery. He cannot engage in driving[], but can occasionally climb ramps and stairs. Mentally,

can perform simple routine tasks not involving a fast assembly line pace or strict production quotas and where the work does not require more than occasional and superficial contact with supervisors, co-workers, or the general public with superficial defined as not involving negotiation, evaluation, conflict resolution, persuasion, or anything more than the straightforward exchange of information.

6.    The claimant cannot perform any past relevant work (20 CFR 404.1565).

7.    The claimant was born on April **, 1965 and was 55 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563).

8.    The claimant has at least a high school education (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from April 22, 2020, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 19-29) (footnote omitted).

## V.  STANDARD OF REVIEW

The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In determining whether an ALJ's findings

14

are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No.

15

11-1300, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  ANALYSIS

In his sole assignment of error, Browning argues that the "ALJ erred when failing to identify substantial evidence supporting the residual functional capacity finding." (Doc. No. 9 at 14.) Browning asserts that the RFC is the "product of legal errors" and that the ALJ failed to "rely upon a medical opinion for the findings relating to mental functioning." (*Id.* at 15.) Browning maintains that the "ALJ's findings throughout the decision fail to explain how the evidence supports the mental abilities contained in the RFC finding, and the prior administrative medical findings … only adopt the prior decision's RFC finding reflecting no mental limitations." (*Id.* at 17.) In addition, Browning accuses the ALJ of failing to explain his findings and of cherry-picking the record evidence. (*Id.* at 18.)

Browning also argues that the ALJ failed to "identify any evidence inconsistent with Plaintiff's allegations regarding mental limitations." (*Id.* at 22) (citing SSR 16-3p).[3] In this same paragraph, Browning asserts in three sentences that the ALJ rejected his allegations regarding his fatigue and seizures and the ALJ's reasons for doing so were unsound. (*Id.* at 22.) Browning then recites medical evidence regarding fatigue that was not set forth in the Facts section of his brief. (*Id.* at 22-23.) While the Court discusses fatigue in the context of Browning's challenge to the ALJ's mental RFC, the Court finds any

---

[3] In addition to one sentence setting forth the ALJ's finding that the record supported "severe mental impairments warranting limitation," this is Browning's entire argument regarding SSR 16-3p and the ALJ's subjective symptom analysis in his opening brief. (Doc. No. 9.) While in his reply brief, Browning raises an argument regarding the ALJ's subjective symptom analysis (Doc. No. 12 at 1-4), that argument is not properly before the Court and is therefore waived. *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.").

independent subjective symptom analysis argument related to seizures and fatigue waived for lack of development.  *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.").

The Commissioner responds that substantial evidence supports the ALJ's RFC determination. (Doc. No. 11 at 4.)  The Commissioner argues that, notwithstanding the "consistently unremarkable findings on mental status examinations despite the lack of significant response to treatment," the ALJ "credited ongoing active symptoms as the basis for the mental limitations in the RFC."  (*Id.* at 5.)  In addition, Browning fails to "explain how the RFC limitations" do not account for the "abnormal findings" in the record that Browning argues the ALJ failed to discuss.  (*Id.*)  For example, regarding lapses in concentration, the ALJ found a moderate impairment in this domain and accounted for this impairment in the RFC.  (*Id.* at 5-6.)  Regarding fatigue, the ALJ considered Browning's subjective complaints and identified medical records showing no report of fatigue and/or that fatigue "did not appear to affect his mental status."  (*Id.* at 6) (citations omitted).

Regarding Browning's argument that the ALJ did not base the mental RFC on a medical opinion, the Commissioner responds that the RFC determination "is a legal finding, not a medical one, and the ALJ did not require persuasive medical opinion evidence to determine the RFC."  (*Id.*) (citation omitted).  In addition, the Commissioner asserts that almost all the cases on which Browning relies stem from *Deskin v. Commissioner of Soc. Sec.*, 605 F. Supp. 2d 908 (N.D. Ohio 2008), which is not binding law and is not consistent with Sixth Circuit precedent.  (*Id.* at 7) (collecting cases).

In summation, the Commissioner argues: "The error Plaintiff sees in the mental RFC is the ALJ providing accommodation beyond [the state agency psychological consultants'] conclusions. For that generosity, Plaintiff argues that the ALJ erred and this case must be sent back."  (*Id.* at 8.)  However, the

Commissioner asserts that Browning fails to meet his burden by identifying evidence establishing he was more limited than the ALJ found. (*Id.*) As Browning fails to show error, the ALJ's decision should be affirmed. (*Id.* at 9.)

The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 404.1545(a)(1). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *See* 20 C.F.R. § 404.1527(d)(3). As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all the relevant evidence (20 C.F.R. § 404.1546(c)) and must consider all of a claimant's medically determinable impairments, both individually and in combination. *See* SSR 96–8p, 1996 WL 374184 (SSA July 2, 1996).

"In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer*, 774 F. Supp. 2d at 880 (citing *Bryan v. Comm'r of Soc. Sec.*, 383 F. App'x 140, 148 (3d Cir. 2010) ("The ALJ has an obligation to 'consider all evidence before him' when he 'mak[es] a residual functional capacity determination,' and must also 'mention or refute [...] contradictory, objective medical evidence' presented to him.")). *See also* SSR 96-8p, 1996 WL 374184, at *7 (SSA July 2, 1996) ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.")). While the RFC is for the ALJ to determine, the claimant bears the burden of establishing the impairments that determine her RFC. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

18

It is well-established there is no requirement that the ALJ discuss each piece of evidence or limitation considered. *See, e.g., Conner v. Comm'r*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r*, 99 F. App'x 661, 665 (6th Cir. May 21, 2004) (finding an ALJ need not discuss every piece of evidence in the record); *Arthur v. Colvin*, No. 3:16CV765, 2017 WL 784563, at *14 (N.D. Ohio Feb. 28, 2017) (*accord*). However, courts have not hesitated to remand where an ALJ selectively includes only those portions of the medical evidence that places a claimant in a capable light and fails to acknowledge evidence that potentially supports a finding of disability. *See e.g., Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 724 (6th Cir. 2014) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports"). *See also Ackles v. Colvin*, No. 3:14cv00249, 2015 WL 1757474, at *6 (S.D. Ohio April 17, 2015) ("The ALJ did not mention this objective evidence and erred by selectively including only the portions of the medical evidence that placed Plaintiff in a capable light."); *Smith v. Comm'r of Soc. Sec.*, No. 1:11-CV-2313, 2013 WL 943874, at *6 (N.D. Ohio March 11, 2013) ("It is generally recognized that an ALJ 'may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding.'"); *Johnson v. Comm'r of Soc. Sec.*, No. 2:16-cv-172, 2016 WL 7208783, at *4 (S.D. Ohio Dec. 13, 2016) ("This Court has not hesitated to remand cases where the ALJ engaged in a very selective review of the record and significantly mischaracterized the treatment notes.").

Substantial evidence supports the RFC findings. At Step Three, the ALJ found as follows:

> A review of the evidence related to the claimant's mental impairments does reveal new and material evidence with regard to the claimant's mental impairments supporting a change in the finding as to the severity of the claimant's mental impairments such that the prior Administrative Law Judge's findings as to the paragraph B criteria and the findings as to the mental residual functional capacity are not adopted under *Drummond*. The claimant does consistently complain of symptoms supporting his diagnosed impairments despite ongoing treatment (*see e.g.* 15F). Thus, considering his

19

ongoing treatment, reports of limiting symptoms, and the abnormal mood and affect findings with the claimant tearful at times, he is found to have severe mental impairments. The mental treatment records contain new and material evidence support a worsening of the claimant's mental health since the prior Administrative Law Judge decision, where the claimant was found to have nonsevere mental impairments (B1A).

The first functional area is understanding, remembering or applying information. In this area, the claimant has a mild limitation. The next functional area is interacting with others. In this area, the claimant has moderate limitation. The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has a moderate limitation. The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. The claimant's mental health treatment records reveal a prolonged grief reaction to his ex-wife's affair many years ago and the situational stressor of a divorce during the alleged period of disability. He told his treating CNP that he cannot move past the loss of the relationship with his wife (B15F/1, 7/12/22). He said he grieves her daily and his depression has worsened as a result (Id.). Notes also reveal the claimant's reports of depression and anxiety due to his seizure disorder and the financial worries as a result (B3F/1). The claimant told his CNP that he felt some relief from the anxiety of having a seizure as his daughter was moving in (B15F/19). He described daily anxiety improved with Buspar and feeling and crying often due to depression (Id.)

The claimant was socially appropriate with providers, was able to relate his history and understand treatment recommendations, and was able to adapt to living with others after living alone (B12F/5-6). He had normal mental findings on October 20, 2022 (B13F/35-36). On January 11, 2023, the claimant talked about a recent encounter with his ex-wife which distressed him. He was pleasant, cooperative, neat, clean, and fully alert. He had good eye contact, normal speech, normal thought processes, intact recent and remote memory, intact attention, intact concentration, intact language, and average intelligence. As for his mood/affect, he was worried, sad and tearful with fair insight and judgment (B15F/63). He does report slight improvement with main concern being grief over his wife's affair and their separation at his April 19, 2023 visit. He had normal mental status exam findings other than a sad affect (B15F). On June 7, 2023 he had normal findings on mental status exam other than a flat affect (B15F/117). Progress was noted through treatment but at no point does the claimant report resolution of symptoms (B12F). **The claimant consistently had an abnormal affect consistent with his mood and was tearful a few times. He has been found moderately limited in interacting with others as a result. His abnormal affect and mood could interfere with his social interactions at work. As for concentrating, persisting and maintaining pace, despite his intact mental status exam findings, his symptoms of anxiety and depression could interference [sic] with these abilities to a moderate extent.** His ability to

20

adapt and manage himself is mildly limited given his ongoing treatment, his participation at sessions and his medication compliance. His ongoing cannabis abuse shows a mild limit on his ability to adapt and manage himself given his compliance with other treatment. As for the last criterion, the claimant graduated from high school and received certification as an auto mechanic and had no issues with past jobs. His mental status exam findings indicate intact abilities in these areas and the claimant has no difficulty at examinations. Only a mild limitation has been found.

(*Id.* at 21-22) (emphasis added).

Later, in the RFC analysis, the ALJ found as follows:

The record documents that the claimant was alert as opposed to fatigued, and not complaining of the fatigue he alleged at the hearing. For example, on January 11, 2023, the claimant was pleasant, cooperative, neat, clean, and fully alert. He had good eye contact, normal speech, normal thought processes, intact recent and remote memory, intact attention, intact concentration, intact language, and average intelligence (B15F/63). He was alert on September 7, 2022 (B15F/35 April 19, 2023. He had entirely normal mental status exam findings other than a sad affect (B15F). On June 7, 2023 he had entirely normal findings on mental status exam other than a flat affect (B15F/117). **There is no indication of significant fatigue in light of these normal mental status exam findings (*see also* B15F/107, 4/19/23, Id. at 119, 6/7/23, B21F, 10/27/23).** The claimant routinely denied malaise, weakness, dyspnea, joint pain/muscle aches, and other symptoms (B15F/120 6/7/23). The claimant's neurological notes also confirm that the claimant was not complaining of limiting fatigue. He denied activity changes and fatigue at his March 1, 2023 follow-up (B16F/11). He had normal physical and mental findings at his 10/27/23 visit for a vocal cord polyp/abscess, a new impairment not meeting durational requirements (B21F). Finally, the claimant did not submit new neurology notes or any treatment records that support his alleged symptom of fatigue as an apparent side effects from his seizure medications. Thus, the claimant's testimony about side effects of fatigue is not supported by the record.

\* \* \*

The state agency adopted the prior Administrative Law Judge's findings as to the mental residual functional capacity in the November 1, 2021 decision based on AR 98-4. I find that hearing level evidence does now contain new and material evidence of a change in the claimant's mental functioning and the state agency's adoption of the mental assessment of the prior Administrative Law Judge is unpersuasive.

The discussion in support of severe mental impairments is incorporated here by reference. **As noted, the claimant did have many intact mental status**

**exam findings on exams (B8F/45, 77), with rare exceptions of any abnormality other than mood and affect** (B10F/6, 7, B15F/7). The claimant was able to relate his history and understand treatment recommendations, and able to adapt to living with others after living alone (B12F/5-6). He had normal mental findings on October 20, 2022 (B13F/35-36). However, on January 11, 2023, the claimant talked about a recent encounter with his ex-wife which distressed him. He was pleasant, cooperative, neat, clean, and fully alert. He had good eye contact, normal speech, normal thought processes, intact recent and remote memory, intact attention, intact concentration, intact language, and average intelligence. As for his mood/affect, he was worried, sad and tearful with fair insight and judgment (B15F/63). He had similar findings elsewhere in the record (B15F/117).

The claimant does report slight improvement with treatment on April 19, 2023. Progress was noted through treatment but at no time did the claimant report resolution of his depression or anxiety (B12F). **The documented symptoms, consistently reported, and the routine findings of abnormal mood and affect with typically normal findings with regard to other areas, support severe mental impairments warranting limitation.** Therefore, there is new and material evidence of a change in the claimant's mental functioning that would warrant a departure from the prior Administrative Law Judge's mental residual functional capacity. His major depressive disorder and generalized anxiety disorder are found to be severe medically determinable impairments.

(*Id.* at 25-26) (emphasis added).

The Court is able to trace the path of the ALJ's reasoning regarding the mental limitations in the RFC.  The ALJ discussed the consistent abnormal mood and affect Browning demonstrated throughout the record, as well as the fact that Browning experienced continuing symptoms without resolution, found Browning's mental impairments to be severe, and incorporated mental limitations into the RFC as a result. (*Id.* at 21-27.)  While the ALJ indeed failed to mention the two instances where treatment providers found Browning demonstrated impaired concentration, the ALJ found Browning had a moderate limitation in his ability to concentrate, persist, and maintain pace, and included limitations in the RFC to address that moderate impairment.  (*Id.*)  However, the ALJ also noted findings inconsistent with disability.  (*Id.*)  In addition, the ALJ explained his rejection of Browning's allegations regarding fatigue, including as it related to his mental impairments.  (*Id.* at 25-26.)  It is the ALJ's job to weigh the evidence and resolve

conflicts, and he did so here.  While Browning would weigh the evidence differently, it is not for the Court to do so on appeal.

To the extent Browning argues that the ALJ erred in failing to "rely upon a medical opinion for the findings relating to mental functioning" (Doc. No. 9 at 15), the Sixth Circuit has specifically rejected such an argument, finding "the Commissioner has final responsibility for determining an individual's RFC . . . and to require the ALJ to base her RFC finding on a physician's opinion 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'"  *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).  *See also Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. Apr. 30, 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."); *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442-443 (6th Cir. Sept. 26, 2017)); *Barnett v. Comm'r of Soc. Sec.*, Case No. 3:23 CV 749, 2024 WL 1596286, at *3 (N.D. Ohio Apr. 12, 2024) ("And, as Judge Grimes points out, it is not binding law. (Doc. 11, at 40) (quoting *Henderson v. Comm'r of Soc. Sec.*, 2010 WL 750222, at *2 (N.D. Ohio) ('The Court finds, however, that *Deskin* ... is not representative of the law established by the legislature, and interpreted by the Sixth Circuit Court of Appeals.')).");  *Carr v. Comm'r of Soc. Sec.*, Case No. 5:23-CV-00187-BMB, 2024 WL 1556398, at *11 (N.D. Ohio Jan. 8, 2024) ("A review of Sixth Circuit caselaw supports a finding that *Deskin* is not consistent with governing precedent.") (collecting cases), *report and recommendation adopted by* 2024 WL 1343473, at *5 (N.D. Ohio Mar. 30, 2024) ("District courts in this circuit have declined to follow *Deskin* and *Kizys*. *See e.g.*, *Adams v. Colvin*, No. 1:14-cv-2097, 2015 WL 4661512, at *15 (N.D. Ohio Aug. 5, 2015) (collecting cases); *Williams v. Astrue*, No. 1:11-cv-2569, 2012 WL 3586962, at *7 (N.D. Ohio Aug. 20,

2012); *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010). So, too, does this Court.").

There is no error.

## VII.    CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

Date: November 22, 2024                       *s/ Jonathan Greenberg*
                                              Jonathan D. Greenberg
                                              United States Magistrate Judge


## <u>OBJECTIONS</u>

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**